## HITCHCOCK v. VALLEY CAMP COAL CO. et al.

District Court, W. D. Pennsylvania. September 25, 1928.

No. 347.

Christy & Christy, of Pittsburgh, Pa., for plaintiff.

Clarke & Doolittle, of Pittsburgh, Pa., and Allen & Allen, of Cincinnati, Ohio, for defendants.

GIBSON, District Judge. The instant action was instituted against the defendants by the plaintiff, who alleged infringement of his patent upon a railway frog. The defendants denied the validity of the patent. After hearing, this court held the patent to be invalid, and dismissed the bill. 10 F.(2d) 381. Upon appeal, the Circuit Court of Appeals reversed the judgment, holding the patent to be valid. 16 F.(2d) 383. Whereupon the defendants filed a petition in the Court of Appeals, in which they alleged that the cause should not be remanded, with directions to enter a decree for an accounting in general terms, and also alleging, in substance, that the plaintiff had been guilty of such laches in advancing his claim as to make any accounting inequitable, or, at most, that the accounting should, for such reason, be limited to a less period than that prescribed by statute. Pursuant to such petition, the Court of Appeals attached to its mandate the following order:

"It is hereby ordered that the mandate in this case, when issued, shall contain the following direction to the Court below:

"This case is remanded with instructions to the Court below to vacate the order dismissing the bill and to enter a decree adjudging validity of the patent, infringement thereof, and directing an accounting, in which accounting the Court shall have authority to give due regard and consideration to any and all evidence of delay in the bringing of the suit, procrastination in its prosecution, and any other features which should equitably affect or limit the scope of such accounting and enable it to enter such a decree as it shall deem just and equitable under the circumstances of the case."

The mandate having come to this court, the plaintiff presented a decree for an accounting in the usual form. The defendants filed a petition wherein they alleged that the plaintiff had been unduly negligent in his procedure in the Patent Office; that the Weir Frog Company, one of the defendants, had been openly manufacturing and selling its infringing frog for a period of ten years, during a large part of which period it had advertised the frog in trade journals and otherwise; and that plaintiff, although he must

have known of such manufacture and sale, had not brought suit to maintain the validity of his patent until February 5, 1920; and further that said plaintiff, having brought his suit, did not bring it to a prompt conclusion, but allowed the action to lie dormant until April 29, 1925, when the cause was tried.

For the reasons assigned in their petition, defendants prayed that an accounting be dispensed with, and a judgment for nominal damages only be entered.

Pursuant to said petition, testimony was taken on behalf of both the plaintiff and the defendants. The testimony disclosed:

That plaintiff had applied for his patent on July 10, 1906. After a number of rejections and modifications of the claims, it was granted on September 28, 1909.

That the Weir Frog Company, the defendant, was a large manufacturer of railway frogs, and had been openly manufacturing and selling its infringing frog in considerable quantities from 1910, and continuously thereafter.

That plaintiff, by letter dated January 22, 1919, called the attention of the Weir Frog Company, the defendant, to the plaintiff's patent and the defendant's manufacture and sale of the alleged infringing frog.

That, after considerable correspondence, plaintiff filed his bill of complaint in the instant case on February 5, 1920.

That the defendants filed their answer to the plaintiff's bill on March 31, 1920. On July 27, 1920, on motion of the defendants, the time for taking testimony on behalf of the defendants was extended to September 30, 1920.

That the plaintiff, during the first year following the time when the case was at issue, had the case placed upon the calendar for trial. Prior to the date fixed, however, plaintiff withdrew the case from the calendar. Thereafter nothing was done by any of the parties to bring the case to trial, or otherwise dispose of it, until shortly before it was heard in this court on April 29, 1925, when plaintiff had the date of hearing fixed.

That plaintiff, from the issuance of the patent to him to 1912 or 1913, manufactured and sold the patented frog. These sales were made chiefly to coal mines. From the time last mentioned plaintiff was exclusively engaged in other matters, and conducted the manufacture and sale of his frog through M. K. Frank, as the exclusive agent, who paid to plaintiff one-half a cent per pound upon the frogs manufactured and sold.

That plaintiff had no personal knowledge of the manufacture and sale of the alleged infringing frog by the Weir Frog Company, defendant, prior to January 1, 1919. His exclusive agent, M. K. Frank, had knowledge of such manufacture and sale prior to January 1, 1919, but when such knowledge first came to him is not shown by the record.

That plaintiff, from 1912 or 1913 to January 1, 1919, paid no attention to the patent, and made no investigation to determine whether or not it was being infringed.

It is plain from the testimony taken in connection with the petition of the defendants, since the return of the mandate, that the patentee gave this patent no attention from 1912 or 1913 to January 1, 1919. He was engrossed in other matters, and turned the patent over to an exclusive agent in 1912 or early in 1913. That agent manufactured and sold the patented frog in constantly decreasing quantities until January 1, 1919, at which time he had practically, if not altogether, ceased to do so. In the meantime, the defendant company, without protest or check of any kind, had been allowed to openly manufacture in increasing quantities its infringing frog. Admitting that Mr. Hitchcock had no actual knowledge of the infringement of his patent, he entirely failed to give his patent any care or attention. From 1910 to January 22, 1919, when the patentee bestirred himself, the Weir Frog Company, undeterred in its open manufacture and advertisement of the frog, had a right to assume that Mr. Hitchcock did not consider his patent of any validity or value. Under such circumstances, it is inequitable, in our judgment, to allow an accounting for so much of the statutory period as preceded plaintiff's notice to defendant that the latter was infringing the patent. See Mosler & Co. v. Lurie (C. C. A.) 209 F. 364.

After defendant was notified, a little more than a year intervened until suit was brought. During this time, considerable correspondence ensued; some of the delay being due to the failure of the defendant to respond promptly to letters written by the plaintiff. The plaintiff cannot well be charged with laches in this delay. Following the formal beginning of the action, plaintiff, within a reasonable time, had the case put down for hearing, and within that year both parties were apparently ready to go to trial. Shortly before the date fixed for hearing, however, the plaintiff had the case continued indefinitely. This action was taken because plaintiff, in pursuance of other business, desired to be absent from this locality for a time. After the case was taken from the trial calendar, plaintiff, for three years and a half,

made no move to bring the case to hearing. Had this delay brought about any protest on the part of the defendant, the court could not well escape the conclusion that plaintiff was guilty of such laches as to make necessary a denial of an accounting to it during this period. But defendant made no such protest, and apparently acquiesced in the delay. Had it, prior to hearing, moved to dismiss the action, and that motion had been refused, its present petition could not well be denied. But defendant, confident in its contention that the patent was invalid, went to trial without any protest based upon the delay. Under such circumstances, the patent having ultimately been declared valid, we do not feel justified in granting defendants' petition to limit the accounting to nominal damages.

Let a decree be drawn for an accounting from the date of plaintiff's notification to defendants of the infringement of the patent.